IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| KATHRYN TENNANT | § | |
| | § | |
| VS. | § | Civil Action No. 4:05cv294 |
| | § | (Judge Schneider/Judge Bush) |
| GORDON SWOR | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Before the Court is Defendant's Motion for Summary Judgment (Docket #8). Having considered the motion, Plaintiff's response, and Defendant's reply, the Court finds as follows.

**Statement of Facts**

Plaintiff began working at Allergy and Asthma associates on November 21, 1992 through an employee leasing company. In 1998, the leasing company was acquired by BeneCorp I, Inc. ("BeneCorp"). Plaintiff thereafter became a BeneCorp employee and continued to work at Allergy and Asthma Associates. At the time Plaintiff became a BeneCorp employee, BeneCorp sponsored an optional long-term disability plan (the "plan") through The Guardian Life Insurance Company of America ("Guardian"). However, Dr. Ginchansky, for whom Plaintiff worked at Allergy and Asthma Associates, initially opted not to offer the long-term disability plan to his leased employees.

After an employee of Allergy and Asthma Associates had a stroke and was forced to take significant time off of work, Allergy and Asthma Associates decided to enroll in the optional long-term disability coverage. Plaintiff, Asthma and Allergy Associates' office manager, called Mary Bates, the "insurance person" at BeneCorp, to inquire about the long-term disability program. Ms. Bates assured Plaintiff that Dr. Ginchansky's employees were already fully insured under the long-term disability program. Plaintiff requested verification, and after claiming to have checked twice,

Ms. Bates assured Plaintiff that Allergy and Asthma Associates leased employees were covered under the long-term disability program and that deductions were being made from their paychecks. As Plaintiff had seen no such payroll deductions, she contacted Defendant, BeneCorp's president, to further inquire about long-term disability coverage. Rather than checking with Guardian, Defendant asked Mary Bates whether employees leased to Allergy and Asthma Associates were covered. She stated that they were and Defendant relayed the answer to Plaintiff. Subsequently, Defendant called Plaintiff and stated that he had made a mistake and that Allergy and Asthma Associates was not signed up for long-term disability coverage. Upon Plaintiff's request, Defendant immediately enrolled Allergy and Asthma Associates' employees in the long-term disability coverage. Plaintiff became a plan participant effective February 1, 2001.

Plaintiff claims that she was never provided with plan books or other materials. Plaintiff contacted BeneCorp in February of 2002 requesting information concerning the terms of the plan. In response to Plaintiff's request, Defendant faxed a letter to Guardian requesting plan booklets and a description of the preexisting condition limitation. Guardian sent Defendant a five page fax indicating that a 3/12 preexisting condition limitation applied to the plan. This meant that if a plan participant had a preexisting condition within 3 months of the beginning of coverage, she would not be able to receive benefits as a result of the condition until she had been covered for at least 12 months. Defendant informed Plaintiff of the 3/12 limitation. However, on February 26, 2002, Defendant noticed a discrepancy between the 3/12 limitation Guardian had quoted him and the 6/24 limitation contained in the Summary Plan Description Guardian delivered to him on February 21, 2002. Defendant claims that a BeneCorp representative promptly delivered the Summary Plan Descriptions to Dr. Ginchansky's office. He contacted Guardian and Guardian responded by sending

him a copy of the contract indicating a 6/24 limitation. Defendant claims that he discussed this with Plaintiff and that Plaintiff was therefore aware in March of 2002 that the Summary Plan Description contained a 6/24 limitation on preexisting conditions.

On April 8, 2002, Plaintiff ceased to work for Dr. Ginchansky due to her disability, undifferentiated spondyloarthopaty. She had originally been diagnosed in December of 2000. Plaintiff remained an inactive employee of BeneCorp until her voluntary termination on July 7, 2002. Guardian denied Plaintiff's claim for long-term disability benefits on July 22, 2002 due to her preexisting condition. Guardian cited the facts that Plaintiff had received prescriptions to treat her condition in August, September, October, November and December of 2000, and that Plaintiff had attended doctor's office visits to address her condition in August and September of 2000 (within six months of the beginning of coverage). Guardian further noted that Plaintiff had ceased working less than 24 months after becoming covered.

Plaintiff filed suit against BeneCorp Business Services, Inc. in the Sherman Division of the Eastern District of Texas on April 23, 2004 alleging claims similar to those in this case. The case was dismissed after the parties settled, and Plaintiff filed the present suit against Defendant Swor shortly thereafter. Plaintiff's Complaint alleges that Defendant breached his fiduciary duty under Employee Retirement Income Security Act of 1974 ("ERISA") § 404, 29 U.S.C. § 1104. Defendant moved for summary judgment on November 18, 2005.

### **Standard**

Summary judgment is proper if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The trial court must

resolve all reasonable doubts in favor of the party opposing the motion. *Casey Enters, Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981)(citations omitted). The party seeking summary judgment carries the burden of demonstrating that there is no actual dispute as to any material fact in the case. This burden, however, does not require the moving party to produce evidence showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The moving party satisfies its burden by "pointing out to the district court... that there is an absence of evidence to support the nonmoving party's case." *Id.*

Once the moving party has satisfied its burden, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). If the nonmovant fails to set forth specific facts in support of allegations essential to that party's claim and on which that party will bear the burden of proof, then summary judgment will be appropriate. *Celotex*, 477 U.S. at 323. Even if the nonmovant brings forth evidence in support of its allegations, summary judgment will be appropriate "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)(citations omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.*

**Analysis**

Defendant first requests summary judgment on the ground that he is not a proper Defendant under ERISA § 502(a)(3), 29 U.S.C. 1132(a)(3), the statute under which Plaintiff seeks relief. The Court agrees. In her Complaint, Plaintiff requests that the Court:

> 8.1.1 Order Defendant to inform the Insurer [that Plaintiff] was eligible for long-term disability benefits on or near October 1998 and that the Insurer cannot assert a

4

>    preexisting condition limitation;
>
>    8.1.2 In the alternative, order Defendant to pay Plaintiff the equitable remedy of reimbursement equivalent to the amount of past-benefits and to pay Plaintiff monthly for future benefits in an amount equal [to] the benefits Plaintiff would have received under the Plan had Defendant not breached his fiduciary duty to Plaintiff.

(Pl. Orig. Comp. at ¶ 8.1.1-2). Plaintiff also requests attorney's fees and pre-judgment and post-judgment interest. Section 502(a)(3) provides:

>    A civil action may be brought–
>
>    ....
>
>    (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provisions of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provisions of this subchapter or the terms of the plan....

The Supreme Court has held that an action seeking to compel a defendant pay a sum of money to a plaintiff is a suit for damages, which form of relief is not allowed by § 502(a)(3). *See Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002). Plaintiff's alternative request for relief, although framed as an "equitable remedy of reimbursement," is essentially a request for damages, which is not allowed by § 502(a)(3). Plaintiff concedes as much in her Response to Defendant's Motion for Summary Judgment in which she states that she is not seeking monetary damages, is not asking the Court to award benefits, and is not asking for the imposition of personal liability against Defendant. (Pl. Resp. to Def. M.S.J. at pgs. 17-18). Rather, Plaintiff claims that she wishes the Court to exercise its "equitable powers to reform the plan records to indicate [that] Plaintiff [was] enrolled [in the plan] before March 31, 2000." (Pl. Resp. to Def. M.S.J. at pg. 17). Plaintiff seems to be requesting that the Court disregard paragraph 8.1.2, which the Court will do since that paragraph requests damages which the Court cannot grant.

5

The only requested remedy left, then, is modification of plan records. The Court acknowledges that, when a plan or plan administrator is a party to a suit, modification of plan records may be an appropriate equitable remedy. *See Mathews v. Chevron Corp.*, 362 F.3d 1172, 1186 (9th Cir. 2004). However, such is not the case here. Defendant, who was terminated from BeneCorp in October of 2003, has no authority to amend the plan documents at issue. In fact, Defendant argues that, even while employed by BeneCorp, he lacked authority to alter or amend the plan documents. The Court cannot direct BeneCorp, Guaranty, or the plan itself to amend the documents as none of these entities are parties to the suit. The Court is therefore unable to grant any of the relief requested by Plaintiff.[1] If modification was Plaintiff's goal, she should have sought such a remedy in her prior suit in this district against BeneCorp or in her 2002 California suit against the plan. In this instance, Plaintiff is not only taking a second (or third) bite at the apple, but she is also biting the wrong apple altogether.

Defendant next argues that he cannot be found liable under 29 U.S.C. § 1104 because he was not a fiduciary with respect to the plan at issue. A fiduciary, for purposes of ERISA, is defined as follows:

> Except as otherwise provided in subparagraph (B), a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets...or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

---

[1] Even if the Court were at liberty to grant the relief requested by Plaintiff, the Court finds that such relief would not be appropriate. Plaintiff admits that the long-term disability program was optional and that Allergy and Asthma Associates' leased employees, including Plaintiff, were not signed up for the program until February of 2001. The Court fails to see how, even if Plaintiff prevailed on all of her claims, it would be equitable to back-date Plaintiff's enrollment in the plan to March of 2000.

6

29 U.S.C. 1002(21). Neither party argues that Defendant had any authority or control regarding management or control of plan assets. The question, then, is whether Defendant exercised any discretionary authority or control regarding the plan's management or had any discretionary authority or responsibility regarding the plan's administration.

The Court should consider the actual authority one exercises over a plan when determining whether he is a fiduciary. *Donovan v. Mercer*, 747 F.2d 304, 308-09 (5th Cir. 1984). Performing merely ministerial functions will not render one a plan fiduciary. *Hatteberg v. Red Adair Co. Employees' Profit Sharing Plan*, 79 Fed. App'x 709, 716 (5th Cir. 2003). That one is knowledgeable about a plan, sends letters directing distributions from a plan, and communicates with attorneys regarding the plan does not indicate the level of discretion that could be characterized as control or authority. *Id*. While the authority to process claims and perform ministerial functions does not render one a fiduciary, the authority to determine benefits and grant, deny, or review denied claims can make one a fiduciary. *Reich v. Lancaster*, 55 F.3d 1034, 1047 (5th Cir. 1995). A fiduciary must have actual decision-making power with respect to the plan's management and administration. *Id.* at 1049.

Plaintiff claims that Defendant was a fiduciary because he "exercised responsibility for enrolling participants, learning of the coverage requirements and providing (or not providing) the requirements to the participants." (Pl. Resp. Def. M.S.J. at pg. 5). Defendant argues that he only performed ministerial functions with respect to the plan, which mainly consisted of acting as a contact person between Guardian and BeneCorp employees. Defendant asserts that he had no discretionary control, authority, or responsibility at all with respect to the plan. The evidence strongly supports Defendant's position. Plaintiff has cited no evidence, in fact, that Defendant

exercised or had any discretionary authority.  Defendant's acts of enrolling people in the plan and requesting information from Guardian regarding the terms of the plan are ministerial in nature and involve no exercise discretion on Defendant's part.  Defendant had no power to grant or deny benefits, modify plan documents, assess claims, or manage plan funds.  In fact, the plan itself states:

> No person, except by a writing signed by the President, a Vice President or a Secretary of The Guardian, has the authority to act for us to: (a) determine whether any contract, Policy or certificate of insurance is to be issued; (b) waive or alter any provisions of any insurance contract or Policy, or any requirements of The Guardian; (c) bind us by any statement or promise relating to the insurance contract issued or to be issued; or (d) accept any information or representation which is not in a signed application.

(Def. M.S.J. Exb. at pg. 19).  The Court finds that Defendant was not a fiduciary with respect to the plan and that Plaintiff's claim pursuant to 29 U.S.C. § 1104 should be dismissed.  In light of the above findings, the Court declines to address Defendant's statute of limitations argument.

## RECOMMENDATION

Based upon the foregoing, the Court finds that Defendant's Motion for Summary Judgment should be GRANTED and that the above titled and numbered cause of action should be DISMISSED WITH PREJUDICE.

Within ten (10) days after filing of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge.  28 U.S.C.A. § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest

injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 3rd day of April, 2006.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE